1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS PICART, CDCR #AR-9988,<br><br>                                    Plaintiff,<br><br>v.<br><br><br><br>POLLARD, Warden; LT. LUNA; SGT.<br>KEENE; and OFFICER ALVARADO,<br><br>                                    Defendants. | Case No.:  21-CV-1849 JLS (RBM)<br><br>**ORDER: (1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS; (2) DISMISSING THE COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b); (3) DENYING MOTION FOR APPOINTMENT OF COUNSEL; AND (4) DENYING MOTION DIRECTING CDCR TO PRODUCE VIDEOTAPE**<br><br>(ECF Nos. 2, 3, 8) |

On November 1, 2021, Plaintiff Louis Picart ("Plaintiff" or "Picart"), an inmate currently incarcerated at R.J. Donovan Correctional Facility ("RJD") located in San Diego, California, and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. *See generally* ECF No. 1 ("Compl."). Plaintiff did not pay the filing fee required by 28 U.S.C. § 1914(a) to commence a civil action when he filed his Complaint; instead, he filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a), along with a Motion for Extension of Time to submit his prison trust account statement and

a Motion for Appointment of Counsel.  *See* ECF Nos. 3 & 4.  On November 2, 2021, Plaintiff's trust account statement was filed.[1]  *See* ECF No. 5.  On December 2, 2021, Picart filed a Motion for California Department of Corrections and Rehabilitation ("CDCR") to Produce Video Footage.  ECF No. 8.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[2]  *See* 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  However, the Prison Litigation Reform Act's ("PLRA") amendments to section 1915 require all prisoners who proceed IFP to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 83–84 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), regardless of whether their actions are ultimately dismissed.  *See* 28 U.S.C. §§ 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires all persons seeking to proceed without full prepayment of fees to file an affidavit that includes a statement of all assets possessed and demonstrates an inability to pay.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015).  In support of this affidavit, the PLRA also requires prisoners to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2); *Andrews v.*

---

[1] Picart filed another trust account statement on December 9, 2021.  ECF No. 7.

[2] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc.  Fee Schedule, § 14 (eff. Dec. 1, 2021)).  The additional $52 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

*King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of twenty percent of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); *id.* § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at twenty percent of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See id.* § 1915(b)(2); *Bruce*, 577 U.S. at 84.

Along with his IFP Motion, Picart filed a Motion for Extension of Time to file his Trust Account Statement. *See* ECF No. 4. The Court, however, received Picart's trust account statement on November 2, 2021, along with a Prison Certificate completed by an accounting officer at RJD.[3] *See* ECF No. 5 at 1–3; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents show Plaintiff currently has no funds on account.[4] *See id.* at 5. Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2); declines to exact any initial filing fee because his prison certificates indicate he may have "no means to pay it," *Bruce*, 577 U.S. at 84; and directs the Secretary of CDCR, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

### INITIAL SCREENING PER 28 U.S.C. §§ 1915(E)(2)(B) & 1915A(B)

**I.    Legal Standard**

Because Picart is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must dismiss *sua sponte* a prisoner's IFP complaint, or any portion of it, that is

---

[3] Accordingly, the Court **DENIES AS MOOT** Picart's Motion for Extension of Time (ECF No. 4).

[4] The trust account statement filed on December 9, 2021, also shows Plaintiff has no funds on account. *See* ECF No. 6 at 1, 6.

frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. In deciding whether to dismiss the complaint for failing to state a claim, the court is generally bound by the facts and allegations contained within the four corners of the complaint. *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007). But, if the plaintiff has supplemented the complaint by attaching documents, the court may consider these documents as part of the complaint when determining whether the plaintiff can prove the allegations asserted in the complaint. *During v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, while a plaintiff's factual allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Indeed, while courts "have an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), a court may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Even before *Iqbal*, "[v]ague and conclusory allegations of official participation in civil rights violations" were not "sufficient to withstand a motion to dismiss." *Id.*

## II.    Plaintiff's Allegations

Picart alleges that on October 16, 2019, while he was an inmate at RJD, he was sitting in his wheelchair watching television in his cell dorm when another inmate, Lopez, came up behind him and "started hitting [Picart] over and over." Compl. at 3. Picart pushed himself back in his wheelchair and when he turned and faced Lopez, Lopez ran out of the cell into the day room, where Lopez started a "big commotion." *Id.* Correctional Officer Alvarado arrived where the commotion was but did not put Lopez in "handcuffs or restrain him in any kind of way," despite Lopez having a razor blade. *Id.* While Lopez was in the day room, he attacked another inmate from behind. Once the commotion was over, "the only thing that was done was to move Lopez to another pod." *Id.*

On November 15, 2019, Picart was in the day room eating lunch when Lopez came in and started hitting Picart from behind. *Id.* at 4. Picart felt "CDCR staff was not going to do anything to protect him," so he pushed himself back from the table, turned his wheelchair, and "went after [Lopez] as he ran out of the day room and out into the yard." *Id.* Plaintiff followed Lopez in an effort to "put an end to this issue" because staff would not "protect inmates from inmates like Inmate Lopez." *Id.* When Picart caught up with Lopez, he discovered Lopez had a razor blade. When he saw the blade, he "panicked and pulled off his arm rest only for the purpose of blocking off an attack from Inmate Lopez."

*Id.*  At some point Correctional Officer Alvarado "caught up" with Lopez and Picart. Lopez "tossed" the razor blade when Alvarado got to the scene and Picart pointed to the blade on the floor.  *Id.*  Alvarado bent down to pick up the blade as Sergeant Keene arrived. After the altercation was over, Keene "forced Plaintiff to sign a chrono stating he could program around Inmate Lopez" and threatened Picart that if he did not sign the chrono he was "going to ad seg."  *Id.*

Plaintiff alleges that as a result of the November 16, 2019 incident, Alvarado "enter[ed] false information in the [Rule Violation Report] 115 [Plaintiff] was issued."  *Id.* Picart claims that at the subsequent Rule Violation Report ("RVR") 115 hearing on December 12, 2019, Defendant Luna found him guilty.  Picart states he was not permitted to "present his evidence or his witnesses" and was told there was no video evidence of the incident because the video cameras were not working.  *Id.* at 5.  Picart wrote a letter to Warden Pollard on June 28, 2021, requesting that the RVR 115 violation be removed from his file, but he got no response.  *Id.*  He wrote two more letters to Pollard in the months that followed, but he did not receive a response to those, either.  Picart alleges Lopez is known by RJD staff as "an unstable inmate with a history of violence" and that "CDCR staff is promoting violence" by failing to protect Plaintiff and other inmates from Lopez. *Id.*

Picart contends Defendants failed to protect him from Lopez, in violation of the Eighth Amendment.  *Id.* at 3–4.  He further alleges that his due process rights were violated by a fundamentally unfair RVR 115 hearing related to the November 16, 2019 incident, during which he was found guilty.  *Id.* at 5.  He seeks compensatory and punitive damages, as well as an injunction ordering production of "video footage of both incidents."  *Id.* at 7.

## III.   Analysis

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  To state a claim under section 1983, Picart must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States

was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030, 1035–36 (9th Cir. 2015).

### A.    *Monetary Claims Against Defendants Acting in Official Capacities*

In his Complaint, Picart indicates he seeks to sue all Defendants in both their individual and official capacities. *See* Compl. at 2. However, the Complaint does not state a viable section 1983 claim against Defendants in their official capacities because the State—the real party in interest—is immune from this suit for damages.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment bars suits for money damages against states and their agencies under Section 1983. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990); *Taylor v. List*, 880 F.2d at 1045 (finding dismissal of civil rights action "as to the Department of Prisons was proper" because "[t]he Nevada Department of Prisons, as a state agency, clearly was immune from suit under the Eleventh Amendment") (citations omitted).

"California has not waived its Eleventh Amendment immunity with respect to claims brought under [Section] 1983 in federal court." *Brown v. Cal. Dep't of Corr*., 554 F.3d 747, 752 (9th Cir. 2009). Therefore, to the extent Plaintiff sues Defendants Pollard, Luna, Keene, and Alvarado in their official capacities and seeks money damages, Defendants are protected under the Eleventh Amendment. *Id*.

### B.    *Failure to Protect Claim*

Picart alleges Defendants Alvarado, Keene, and Pollard are liable in their individual capacities for failing to protect him from Lopez in violation of Plaintiff's Eight Amendment Rights. Compl. at 3–6. The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984); *DeShaney v. Winnebago Cty. Dep't of Social Services*, 489 U.S. 189, 199–200 (1989) ("[W]hen the State takes a person into its custody and holds him there

against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). This duty includes the requirement that officials protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

The failure of prison officials to protect inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate health or safety. *Farmer*, 511 U.S. at 834. A prison official is deliberately indifferent if he knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id*. at 837. Allegations in a pro se complaint sufficient to raise an inference that the named prison officials knew that the plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it adequately state a failure-to-protect claim. *See Hearns*, 413 F.3d at 1041–42 (citing *Farmer*, 511 U.S. at 847).

### 1.    *Warden Pollard*

Picart alleges his Eighth Amendment rights were violated by Warden Pollard, who Picart contends was deliberately indifferent to his safety. Compl. at 5. A defendant cannot be held liable for a constitutional violation pursuant to section 1983 "unless they were integral participants in the unlawful conduct." *Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018). Furthermore, there is no respondeat superior liability under section 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). It is not enough that the supervisor merely has a supervisory relationship over the defendants; the plaintiff must show that the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id*.

Nothing in the allegations raised in the Complaint show Pollard participated in, directed, or otherwise was integral to the alleged violations. Indeed, the only reference to

Pollard in the body of the Complaint is Plaintiff's allegation that on June 28, 2021, Picart wrote a letter to Pollard about the issue of inmate violence in the prison and to try to get the RVR 115 guilty finding removed from his CDCR "file." Compl. at 5. He wrote another letter to Pollard on August 26, 2021. *Id*. Picart got no response from Pollard to either of his letters. *Id*. Picart alleges that Pollard's failure to respond "means [Pollard] is ok with the way this prison is run . . . [including the] failure to step up when the safety and security of this institution is at risk." *Id*.

Even assuming Pollard read the letters Plaintiff sent regarding inmate safety, both letters were sent well after Picart's altercations with Lopez, and thus nothing in the factual allegations contained in the Complaint suggests that Pollard knew about Plaintiff's issues with Lopez prior to the October 16, 2019 and November 15, 2019 incidents. Therefore, Picart fails to allege that Warden Pollard "[knew] of and disregard[ed] an excessive risk to inmate health or safety" presented by Inmate Lopez. *See Farmer*, 511 U.S. at 837. Furthermore, prison officials in a supervisory role are not subject to liability for the acts of lower officials based on a respondeat superior or vicarious liability theory. *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Accordingly, Picart has failed to state an Eighth Amendment claim against Pollard.

### 2.   *Officer Alvarado*

Next, Picart contends Officer Alvarado failed to protect Picart from Lopez in violation of Picart's Eighth Amendment rights. Picart alleges Lopez is known to RJD officers as an "unstable inmate" with a history of drug use and violence against other inmates and that Alvarado failed to protect Picart from Lopez on October 16, 2019 and November 15, 2019. Compl. at 3–4.

As noted above, correctional officers have a duty to protect inmates from violence perpetrated by other prisoners. *Farmer*, 511 U.S. at 833; *Hearns*, 413 F.3d at 1040. However, "[p]rotecting the safety of prisoners and staff involves difficult choices and evades easy solutions." *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986). As such, to state a failure to protect claim, Picart must first allege facts sufficient to show that the risk

he faced was objectively "sufficiently serious"—*i.e.*, that the conditions under which he was confined posed a "substantial risk of serious harm" to him. *Farmer*, 511 U.S. at 834; *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). Moreover, the deliberate indifference standard requires that even if a prison official is alleged to have "actually kn[own] of a substantial risk to [Plaintiff's] health or safety[,][he] may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Deliberate indifference is, therefore, "'something more than mere negligence,' but 'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 835). Thus, in order to state a plausible claim for relief against Alvarado, Picart's Complaint must include enough "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), that Alvarado actually knew Lopez posed an objectively serious risk to Picart's safety or health, "inferred that substantial harm might result from the risk," and then failed to take reasonable action to abate it. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995).

As currently pleaded, the Court finds Plaintiff's Complaint fails to allege a plausible claim for relief under the Eighth Amendment against Alvarado. Picart has failed to include sufficient "factual enhancement" from which the Court may reasonably infer Alvarado acted, or failed to reasonably act, under circumstances that presented a "substantial" or "obvious" risk of imminent harm to him. *See Iqbal*, 556 U.S. at 678; *Baze v. Rees*, 553 U.S. 35, 50 (2008) (to be deliberately indifferent, a prison official must fail to reasonably act under circumstances which are "'sure or very likely to cause serious . . . and needless suffering'" and which "give rise to 'sufficiently imminent dangers.'" (quoting *Helling v. McKinney*, 509 U.S. 25, 33–35, (1993)).

As for the incident on October 16, 2019, Picart alleges that Lopez attacked him from behind and "started hitting [him] over and over" and then ran into the dayroom where "he started a big commotion." Compl. at 3. Plaintiff states that when Alvarado "got to where the commotion was," he failed to immediately put Lopez in handcuffs or restrain him,

10

despite seeing that Lopez had a razor blade. *Id*. He contends Lopez could have "use[d] that blade and cut Plaintiff or other inmates." *Id*. Picart admits, however, that Alvarado did put Lopez in handcuffs shortly after arriving at the scene and ultimately moved Lopez to another pod in the prison. *Id*. That Alvarado failed to put Lopez in handcuffs immediately does not amount to deliberate indifference. *See Wallis*, 70 F.3d at 1077. Based on the facts alleged in the Complaint, it appears that as soon as Alvarado became aware of a disruption in the day room, he proceeded to the area and ultimately subdued Lopez. Thus, Picart has failed to allege Alvarado was deliberately indifferent to his or other inmates' safety. *Id*.

In addition, Picart does not provide any facts suggesting that Alvarado knew Lopez was a threat to Plaintiff prior to the October incident. *Segovia v. County of Los Angeles*, 41 Fed. Appx. 126, 127 (9th Cir. July 10, 2002) (Unpub. Disp.) (holding that an inmate had not adequately pled a failure to protect claim where he did "not allege that, prior to the attack, his jailers were aware that he was in danger"); *Thomas v. Sheppard-Brooks*, No. 1:06-CV-01332 LJO, 2011 WL 3917943, *8 (E.D. Cal. Sept. 6, 2011), *report and recommendation adopted*, 2011 WL 4499572 (E.D. Cal. Sept. 27, 2011). While Picart alleges Lopez is a "troublemaker" and drug addict, Compl. at 3, his general belief that Lopez was a risk or posed the "mere threat" of future bodily harm does not provide a basis for a cognizable Eighth Amendment claim. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).

Likewise, Picart has failed to state a failure to protect claim against Alvarado related to the November 15, 2019 incident.[5] Picart alleges that, on that date, he was in the dayroom

_____

[5] The Supreme Court has held that to recover damages for harm caused by actions "whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The Court has extended the *Heck* bar to § 1983 suits that would negate prison disciplinary proceedings that affect good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). A prisoner's challenge to a disciplinary hearing procedure is barred if judgment in his favor would necessarily imply the invalidity of the resulting loss of good-time credits. *Id*. at 646. As such, a "prisoner's

when Lopez came in and "started hitting him from behind." Compl. at 4. When Picart "turned his wheelchair" to defend himself, Lopez ran out of the dayroom and Picart followed him out onto the yard. When he saw Lopez had a razor blade, Picart used the armrest of his wheelchair to "block[] off the attack." *Id.* At that point, Alvarado "caught up" with Lopez and Picart and ended the altercation. *Id.*

Even assuming Picart has adequately alleged that, given Lopez's prior conduct, he "objectively" presented a substantial risk of harm, Picart nevertheless fails to allege facts supporting the subjective deliberate indifference prong because he does not plausibly allege Alvarado himself was actually aware Picart was at "substantial risk of serious harm" from Lopez just prior to the November 15, 2019 incident. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016). Based on the allegations in the Complaint, it appears Alvarado was outside on the yard and only observed the altercation after Picart pursued Lopez from the dayroom. *See* Compl. at 4. It appears Alvarado intervened as soon as he saw the altercation. *Id.* Accordingly, as currently pleaded, Picart fails to state an Eighth Amendment claim against Alvarado.

### 3. Sgt. Keene

Picart contends Sgt. Keene violated his Eight Amendment rights when he "did nothing to protect [him]" from Lopez. In his Complaint, Picart only makes reference to Keene with regard to the November 15, 2019 incident. Compl. at 4. Picart states that after Alvarado "caught up" with Plaintiff and Lopez, he bent down to pick up the razor blade. Keene "came up and said to Alvarado: "[B]e careful with that blade." *Id*. Picart alleges

---

§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis added). While not entirely clear from the face of the Complaint, it appears Picart was found guilty in an internal prison proceeding related to the November 2019 incident with Lopez. *See* Compl. at 5. If Picart's success on his pending § 1983 claim would negate one of the elements the violation, *Heck* may bar his failure to protect claim.

that, after the incident, Keene "forced [him] to sign a chrono stating he could program around Inmate Lopez with a threat [that] if [Picart] did not sign [he] was going to Ad Seg." *Id.*

Picart fails to allege sufficient facts to support a claim of deliberate indifference. There is no evidence that Keene knew of the previous altercation between Lopez and Plaintiff, nor any allegation that would suggest Keene acted 'with a sufficiently culpable state of mind.'" *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quoting *Wilson*, 501 U.S. at 298). As discussed above, such a showing requires "more than ordinary lack of due care . . . . It is obduracy and wantonness, not inadvertence or error in good faith." *Whitley*, 475 U.S. at 319. Picart has failed to make such a showing here.

In sum, as currently pleaded, the Complaint fails to state a claim of Eighth Amendment deliberate indifference against Pollard, Alvarado, and Keene for failure to protect Plaintiff. *Farmer*, 511 U.S. at 847; *Hearns*, 413 F.3d at 1041–42.

### C.    *Rules Violation Report Claim*

Picart appears to allege his rights under the Due Process Clause were violated by Defendants Luna, Keene, and Alvarado for finding him guilty of a rule violation based on false evidence presented at an unfair RVR hearing. Compl. at 5–6. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural

requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71.

Here, Plaintiff has failed to state a due process claim. First, while Picart alleges he was found guilty of a rule violation, he fails to indicate what consequences, if any, he suffered as a result of the RVR guilty finding. "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223 (quoting *Sandin*, 515 U.S. at 484). Picart does not allege any facts to show the type of "atypical and significant hardship" required to invoke a liberty interest under *Sandin*. Because the Court cannot ascertain whether he suffered an "atypical and significant hardship" sufficient to create a liberty interest under *Sandin*, Picart has failed to state a due process claim against Alvarado, Luna, and Keene.

Even assuming Picart had adequately alleged a liberty interest, he still would fail to state a claim. With regard to Alvarado, Picart states Alvarado "enter[ed] false information in the RVR 115" related to the November 15, 2019 incident between Picart and Lopez. Compl. at 4. Even if a false charge results in discipline that amounts to the deprivation of a protected liberty interest under *Sandin*, a section 1983 claim is not stated if the inmate is afforded the procedural protections required by federal law at the disciplinary hearing. *See Smith v. Mesinger*, 293 F.3d 641, 654 (3d Cir. 2002); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984); *Solomon v. Meyer*, No. 11-cv-02827-JST

(PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no constitutionally protected right to be free from false disciplinary charges.").

Picart alleges Luna violated his due process rights when he found Picart guilty of the RVR because he was "not allowed to present his evidence or witnesses" at the hearing and was told there was no surveillance recording of the incident because the "video cameras were not working." Compl. at 5. First, the lack of video surveillance evidence does not implicate a due process violation under *Wolff*. *See Brown v. Ives,* No. 14-cv-0116-DDP PJW, 2014 WL 3534055, at *2 (C.D. Cal. July 16, 2014) (rejecting argument that prison staff denied inmate a fair hearing by preventing him from seeing a video of the incident because no such video existed). Furthermore, while allegations that prison officials refused to call a requested witness could potentially state a cognizable claim, *see Serrano v. Francis*, 345 F.3d 1071, 1079–80 (9th Cir. 2003), the right is not unlimited, *see Williams v. Thomas*, 492 F. App'x 732, 733 (9th Cir. 2012) ("Prisoners have a limited procedural due process right to call witnesses at disciplinary hearings so long as it will not be unduly hazardous to institutional safety or correctional goals . . . . Prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify."). Hearing officers may also deny a requested witness on grounds other than institutional safety. *Wolff*, 418 U.S. at 566 (explaining that witnesses may be denied in order to keep hearing within reasonable limits, as well as "for irrelevance, lack of necessity, or the hazards presented in individual cases"). Here, Picart merely states he was denied an opportunity to call witnesses but provides no facts regarding what witnesses he was prevented from calling, why, or what relevant testimony they might have provided. Therefore, Plaintiff has failed to state a due process claim against Luna.[6]

---

[6] Plaintiff also refers to "equal protection of laws" in his claim against Luna. Compl. at 5. To the extent he is attempting to allege that his rights under the Equal Protection Clause of the Constitution were violated when he was purportedly denied his requested witnesses at his RVR hearing, Picart fails to state a claim. To state an equal protection claim, a prisoner must allege that his treatment is invidiously dissimilar to that received by other inmates. *See More v. Farrier*,

15

Finally, Picart contends Keene violated his right to due process by forcing him to agree to "program" with Lopez.  Compl. at 4.  Plaintiff alleges that, shortly after the November 15, 2019 incident with Lopez, Keene "forced Plaintiff to sign a chrono stating he could program around Inmate Lopez." *Id.*  Plaintiff alleges that Keene threatened to send Plaintiff to Administrative Segregation if Plaintiff did not sign the chrono, despite Inmate Lopez being the purported aggressor during the incident and having a "history of violence" against other inmates.  *Id.* at 4–5.  It is not clear, from the facts alleged in the Complaint, how this impacted the fairness of Plaintiff's subsequent disciplinary hearing.  As noted above, due process requires only written notice of the charges at least 24 hours before the hearing, a statement of the evidence relied upon and the reasons for the decision, and an opportunity to call witnesses and present evidence, if doing so would not unduly threaten institutional security.  *Wolff*, 418 U.S. at 563–66.  Picart's allegations against Keene do not implicate due process and therefore fail to state a claim.

### D.    Leave to Amend

Based on the foregoing, the Court finds Plaintiff's Complaint fails to state any section 1983 claim upon which relief can be granted; therefore, it must be dismissed *sua sponte* and in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  *See Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121.  Because Plaintiff is proceeding pro se, however, the Court, having now provided Plaintiff with "notice of the deficiencies in

---

984 F.2d 269, 271–72 (8th Cir. 1993) (stating that, absent evidence of invidious discrimination, federal courts should defer to judgment of prison officials); *Timm v. Gunter*, 917 F.2d 1093, 1099 (8th Cir. 1990) (same).  The first step in determining whether the inmate's equal protection rights were violated is to identify the relevant class of prisoners to which he belongs.  *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  The class must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified.  *Id.* at 1031 (affirming district court's grant of defendants' motion for summary judgment because inmate, who officers did not know was entitled to a vegetarian meal, failed to raise triable issue of fact that he was treated differently from any other inmate).  Here, Plaintiff makes no allegation as to what class of prisoners he belongs and how the treatment he received was invidiously dissimilar to that received by other inmates.

his complaint," will also grant him an opportunity to fix them.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

In light of Plaintiff's pro se status, the Court grants him leave to amend his pleading to attempt to sufficiently allege section 1983 claims against Defendants.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar*, 698 F.3d at 1212).

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has also filed a Motion for Appointment of Counsel because he is unable to afford a lawyer.  ECF No. 3 at 1–2.  He states he is "having a hard time getting the librarian . . . to accommodate [him] with proper library time."  *Id.* at 2.  Plaintiff further contends that he needs counsel because he has only a "seventh grade education level."  *Id.*

There is no constitutional right to counsel in a civil case.  *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  And, while 28 U.S.C. § 1915(e)(1) grants the district court limited discretion to "request" that an attorney represent an indigent civil litigant*, Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004), this discretion may be exercised only under "exceptional circumstances."  *Id.*; *see also Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A finding of exceptional circumstances requires the Court "to consider whether there is a 'likelihood of success on the merits' and whether 'the prisoner is unable to articulate his claims in light of the complexity of the legal issues involved.'"  *Harrington v. Scribner*, 785 F.3d 1299, 1309 (9th Cir. 2015) (quoting *Palmer*, 560 F.3d at 970).

While it is too early for the Court to determine Plaintiff's likelihood of success on the merits, Plaintiff fails to establish the requisite "exceptional circumstances" that would warrant appointment of counsel.  A plaintiff is only entitled to appointed counsel if he can show "that because of the complexity of the claims he [is] unable to articulate his

positions." *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *overruled on other grounds*, 154 F.3d 952 (9th Cir. 1998) (en banc); *see also Taa v. Chase Home Fin.*, 2012 WL 507430, at *2 (N.D. Cal. Feb. 15, 2012) (noting that plaintiffs' lack of legal training and poverty did not constitute exceptional circumstances, as these are the types of difficulties many other litigants face in proceeding in pro se); *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) ("If all that was required to establish successfully the complexity of the relevant issues was a demonstration of the need for development of further facts, practically all cases would involve complex issues."); *see also LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987) (affirming a district court's denial of request for appointment of counsel where pleadings demonstrated petitioner had "a good understanding of the issues and the ability to present forcefully and coherently his contentions").

Plaintiff has not established that this case is "exceptional" or that the issues in it are particularly complex. Plaintiff's arguments regarding his disabilities under the Americans with Disabilities Act of 1990 do not change this analysis. *See Jones v. Kuppinger*, No. 2:13-cv-0451-WBS-AC, 2015 WL 5522290, at *3–4 (E.D. Cal. Sept. 17, 2015) (stating that "[c]ircumstances common to most prisoners, such as a deficient general education, lack of knowledge of the law, mental illness and disability, do not in themselves establish exceptional circumstances warranting appointment of voluntary civil counsel"); *see also Jones v. Stieferman*, 06-cv-2732-FCD-CMK-P, 2007 WL 4219169, at *1 (E.D. Cal. Nov. 29, 2007) ("being disabled and requiring use of a wheelchair to assist with mobility is not the type of exceptional circumstances which allow the court to request voluntary assistance of counsel").

Furthermore, to the extent Plaintiff contends he requires assistance of counsel because he has limited access to the prison law library and a lack of education, such circumstances are typical of almost every pro se prisoner civil rights plaintiff and alone are insufficient to demonstrate the "exceptional circumstance" required to justify appointment of counsel. *See, e.g., Wood v. Housewright*, 900 F.2d 1332, 1335–36 (9th Cir. 1990)

(upholding denial of appointment of counsel where plaintiff complained that he had limited access to law library and lacked a legal education); *Marquez v. United States*, No. 3:18-cv-00434-CAB-NLS, 2018 WL 3388098, at *3 (S.D. Cal. July 12, 2018) ("[M]any of Plaintiff's assertions, such as limited education, no legal training, and limited access to the law library, are issues common to many prisoners and do not amount to exceptional circumstances."); *Galvan v. Fox*, No. 2:15-cv-01798-KJM-DB, 2017 WL 1353754, at *8 (E.D. Cal. Apr. 2017) ("Circumstances common to most prisoners, such as lack of legal education and limited law library access, do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel."); *Jones*, 2015 WL 5522290, at *3–4 ("Circumstances common to most prisoners, such as a deficient general education, lack of knowledge of the law, mental illness and disability, do not in themselves establish exceptional circumstances warranting appointment of voluntary civil counsel.").

The Court finds no "exceptional circumstances" currently exist and accordingly **DENIES** Plaintiff's Motion for Appointment of Counsel without prejudice.

### MOTION TO PRODUCE VIDEO FOOTAGE

On December 13, 2021, Picart filed a "Motion for CDCR to Produce Video Footage and Incident Report of Both Incidents." *See* ECF No. 8. Because the Complaint must be dismissed for failure to state a claim, the Court **DENIES** the Motion **WITHOUT PREJUDICE** as premature. *See Iqbal,* 556 U.S. at 678–79 (noting that court "does not unlock the doors of discovery" if the plaintiff fails to "state a claim for relief that is plausible on its face" and is "armed with nothing more than conclusions"); *see also Bettencourt v. Parker*, No. 1:16-CV-00150-DAD-BAM PC, 2016 WL 4137242, at *1 (E.D. Cal. Aug. 4, 2016) (denying prisoner's requests to begin discovery and set matter for trial as premature in light of Court's duty to screen his complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A), *report and recommendation adopted*, No. 1:16-CV-00150-DAD-BAM PC, 2016 WL 4796313 (E.D. Cal. Sept. 13, 2016).

/ / /

/ / /

**CONCLUSION**

For the reasons provided above, the Court:

1.     **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) and **DENIES AS MOOT** his Motion for Extension of Time to File Trust Account Statement (ECF No. 4);

2.     **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and to forward said payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). *ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION*;

3.     **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4.     **DENIES** the Motion for Appointment of Counsel (ECF No. 3) **WITHOUT PREJUDICE**;

5.     **DENIES** the Motion for Production of Video Footage and Incident Reports (ECF No. 8) **WITHOUT PREJUDICE**;

6.     **DISMISSES** this civil action *sua sponte* based on Plaintiff's failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and

7.     **GRANTS** Plaintiff <u>forty-five (45) days' leave from the date of this Order</u> in which to file an Amended Complaint that cures the deficiencies of pleading noted above. The Amended Complaint must be complete by itself without reference to Plaintiff's original pleading.  Defendants not named and any claim not realleged in the Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012)

(noting that claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  February 9, 2022

Hon. Janis L. Sammartino
United States District Judge

21-CV-1849 JLS (RBM)